UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHELSEA L. IMMKE, | CASE NO. 1:18CV2218 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| ANDREW M. SAUL[1], COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION & ORDER |
| Defendant. | |

Chelsea L. Immke ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, Plaintiff asserts that the administrative law judge ("ALJ") erred by: (1) failing to provide an explanation as to why her Borderline Intellectual Functioning ("BIF") and Attention Deficity Hyperactivity Disorder "(ADHD") did not meet or medically equal Listing 12.11 of the Listing of Impairments; and (2) failed to follow Social Security Ruling ("SSR") 96-8p when determining her residual functional capacity ("RFC") and lacked substantial evidence for the RFC. ECF Dkt. #13. For the following reasons, the Court AFFIRMS the decision of the ALJ and DISMISSES Plaintiff's case in its entirety WITH PREJUDICE.

**I.     FACTUAL AND PROCEDURAL HISTORY**

Plaintiff filed applications for DIB and SSI in December 2014 and March 2015, respectively, alleging disability beginning January 1, 2013 due to ADHD. ECF Dkt. #11("Tr.").[2] at 249-256,

---

[1]On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, replacing acting Commissioner Nancy A. Berryhill.

[2] All citations to the transcript refer to the page numbers assigned when the transcript was compiled (located on the bottom right corner of each page) rather than the page numbers assigned when the transcript was filed in the CM/ECF system ("PageID #").

277-285. The Social Security Administration ("SSA") denied her applications initially and upon reconsideration. *Id.* at 145-159. Plaintiff requested a hearing before an ALJ, which was held on November 10, 2016 where Plaintiff appeared, but she was not represented. *Id.* at 31. After explaining her right to have a representative at the hearing, Plaintiff indicated that she wanted to proceed without representation. *Id*. at 31-33. The ALJ then called Plaintiff's mother into the hearing after Plaintiff told him that her mom usually helped with her with these things. *Id*. at 33. After again explaining Plaintiff's right to counsel, this time to Plaintiff and her mother, Plaintiff's mother indicated that she did not think that Plaintiff needed a representative because it was clear that Plaintiff had a disability. *Id*. at 38-40. The ALJ explained that it is not just about whether Plaintiff had a disability, but it was also about whether she meets the social security benefits criteria. *Id*. at 35. After further discussion and explanation, Plaintiff decided to postpone the hearing in order to secure a representative. *Id*. at 35-43.

On May 9, 2017, the ALJ held another hearing, with Plaintiff appearing, represented by counsel, and her mother appearing as well. Tr. at 45. Plaintiff and her mother testified, as well as a vocational expert ("VE"). *Id*.

On November 17, 2017, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI. Tr. at 12-22. Plaintiff requested that the Appeals Council review the decision and the Appeals Council denied her request for review on August 16, 2018. *Id*. at 1-6, 240.

On September 26, 2018, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. She filed a merits brief on February 8, 2019 and Defendant filed a merits brief on May 3, 2019. ECF Dkt. #s 13, 16. Plaintiff filed a reply brief on May 17, 2019. ECF Dkt. #17.

**II.  RELEVANT PORTIONS OF ALJ'S DECISION**

On November 17, 2017, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. at 12-22. He found that Plaintiff had not engaged in substantial gainful activity since January 1, 2013, the alleged onset date. *Id.* The ALJ further determined that Plaintiff had the severe impairments of ADHD and BIF. *Id*. He found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Subpart P, Appendix 1. *Id.* After considering the record, the ALJ

2

concluded that Plaintiff had the RFC to perform work at all exertional levels with the following nonexertional limitations: understanding and remembering 1-2 step tasks; maintaining attention, concentration, persistence or pace for simple 1-2 step tasks in an environment without strict production rates or quotas; interaction on an occasional and superficial basis; and adjusting to minor routine workplace changes. *Id.* at 17.

The ALJ determined that Plaintiff had no past relevant work, she was a younger individual on the alleged disability onset date, had a high school education, and she could communicate in English. Tr. at 21. Next, the ALJ concluded that based on Plaintiff's age, education, work experience, his RFC for her and the testimony of the VE, jobs existed in significant numbers in the national economy that Plaintiff could perform, such as cleaner housekeeper and laundry laborer . *Id.* For these reasons, the ALJ found that Plaintiff had not been under a disability, as defined in the SSA, from January 1, 2013 through the date of his decision. *Id.* at 22.

### III.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to Social Security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.     STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence exists in the record to support a different conclusion. Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604-605 (6th Cir. 2009), The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 937 (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009)) (internal citations omitted). Therefore, even if an ALJ's decision is supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*

*v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. LAW AND ANALYSIS

### A. Listing 12.11

Plaintiff first asserts that the ALJ erred at Step Three of the sequential evaluation because he found that she was only moderately limited in the "Paragraph B" criteria of Listing 12.11 when she was at least markedly limited in the required number of criteria. ECF Dkt. #13 at 10-14. For the following reasons, the Court finds that the ALJ properly applied the correct legal standards and substantial evidence supports his Step Three determination.

The Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 describes impairments for each of the major body parts that are deemed of sufficient severity to prevent a person from performing gainful activity. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. In the third step of the analysis to determine a claimant's entitlement to social security benefits, it is the claimant's burden to bring forth evidence to establish that her impairments meet or are medically equivalent to a listed impairment. *See* 20 C.F.R. §§ 416.920(a)(4)(iii) & 404.1520(a)(4)(iii); *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). In order to meet a listed impairment, the claimant must show that her impairments meet all of the requirements for a listed impairment. 20 C.F.R. §§ 416.925(c)(3) & 404.1525(c)(3); *e.g.*, *Hale v. Sec'y of Health & Human Servs.,* 816 F.2d 1078, 1083 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). An impairment that meets only some, but not all, of the medical criteria does not qualify, despite its severity. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). A claimant can also show that her impairment is the medical equivalent of a listing, 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5), which means it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5), 404.1526(a), 416.926(a). Where a "substantial question" is raised in the record as to whether a claimant could qualify as disabled under a listing, an ALJ must compare the medical evidence with the listed impairments in order to consider whether the condition is equivalent in severity to the medical findings for any Listed Impairment. *See Reynolds v. Comm'r*

*of Soc. Sec.*, 424 Fed. Appx. 411, 414-15 (6th Cir. 2011).  In order to conduct a meaningful review, the ALJ must make sufficiently clear the reasons for his decision. *Id.* at 416-17.

Listing 12.00 is entitled "Mental Disorders" and explains that the listings for the mental disorders are arranged into 11 categories, with Listing 12.11 identifying the relevant Listing in this case for neurodevelopmental disorders.  Listing 12.00(A)(1).  Listing 12.00(A)(2) indicates that Listing 12.11, among other mental disorder listings, has two paragraphs, A and B, and a claimant's mental disorder must satisfy the requirements of both paragraphs.  Listing 12.00(A)(2).  It goes on to explain that Paragraph A of each Listing is the medical criteria that have to be present in the medical evidence, and Paragraph B provides the functional criteria that are evaluated with a rating scale to determine how a claimant's mental disorder limits her functioning.  Listing 12.00(A)(2)(a) and (b).

Listing 12.11 provides the following:

> 12.11 Neurodevelopmental disorders (see 12.00B9), satisfied by A and B:
>
> A. Medical documentation of the requirements of paragraph 1, 2, or 3:
>
> > 1. One or both of the following:
> >
> > > a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or
> > >
> > > b. Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").
> >
> > 2. Significant difficulties learning and using academic skills; or
> >
> > 3. Recurrent motor movement or vocalization.
>
> AND
>
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>
> > 1. Understand, remember, or apply information (see 12.00E1).
> >
> > 2. Interact with others (see 12.00E2).
> >
> > 3. Concentrate, persist, or maintain pace (ssee 12.00E3).
> >
> > 4. Adapt or manage oneself (see 12.00E4).

Listing 12.11. Listing 12.00(E) and (F) expand upon each of the "Paragraph B criteria," with Listing

12.00(E) describing each of the "Paragraph B criteria" and Listing 12.00(F) explaining how the Paragraph B criteria are used and the five-point rating scale of the criteria. Listing 12.00(E), (F). The five-point rating scale begins with no limitation, which means that the claimant can function independently in the area, and can do so "appropriately, effectively and on a sustained basis." Listing 12.00(F)(2)(a). The second is that of mild limitation, which is defined as the claimant's functioning "in this area independently, appropriately, effectively, and on a sustained basis is slightly limited." Listing 12.00(F)(2)(b). The next rating is moderate limitation, which is when the claimant's functioning "in this area independently, appropriately, effectively, and on a sustained basis is fair." Listing 12.00(F)(2)(c). The fourth rating is that of a marked limitation, which is defined as functioning "in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." Listing 12.00(F)(2)(d). The fifth and final rating is that of an extreme limitation, which is defined as "[y]ou are not able to function in this area independently, appropriately, effectively, and on a sustained basis." Listing 12.00(F)(2)(e).

Plaintiff contends that the ALJ's "Paragraph B criteria" analysis is flawed because "the substantial weight of the evidence in the record suggests that Chelsea's ability to function on a sustained basis is seriously limited and subject to at least two marked limitations to these four functional areas." ECF Dkt. #13 at 12. She asserts error with the ALJ's findings that she had only moderate limitations in each of the functional areas and cites to evidence in the record that she believes shows that she was unable to perform the activities cited by the ALJ without help or reminders, or when she did perform things on her own, she was distracted, limited, and received poor evaluations. *Id.* at 12-13.

Although Plaintiff asserts that substantial evidence supports a finding that her impairments met or medically equaled the "Paragraph B criteria" of Listing 12.11, the Court notes that the proper standard of review for this Court is not whether substantial evidence in the record supports a finding that Plaintiff's ADHD and BIF met the "Paragraph B criteria." Rather, it is whether the ALJ applied the correct legal standards and whether substantial evidence supports his determination. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). This Court must affirm the decison of the ALJ

7

if substantial evidence supports his decision, even if substantial evidence would have supported an opposite conclusion. *Id*.

The Court finds that the ALJ applied the proper legal standards and substantial evidence supports his Step 3 determination and his finding of moderate limitation in the "Paragraph B criteria." He cited to the proper regulations and Social Security Rulings in his Step 3 determination and he specifically indicated that he considered Listing 12.11 in his analysis. Tr. at 15. He identified Plaintiff's severe impairments of ADHD and BIF and referred to her diagnoses of fourth chromosome deletion and ADHD. *Id*. at 18, citing Tr. at 426. The ALJ further set forth the requirements of the "Paragraph B" criteria and the ratings, and he explained why he determined that Plaintiff had moderate limitations in each of the functional areas. *Id*. at 16-17.

The ALJ started his analysis by pointing out that no treating or examining physician found that Plaintiff's conditions met or medically equaled a Listing. Tr. at 15. In fact, no treating physician, psychiatrist, or psychologist opinions are found in the record. Plaintiff acknowledges that no treating source opinion exists in the record, but explains that she has received very little medical care as an adult because the condition that caused her BIF, fourth chromosome deletion syndrome, is a genetic condition for which there is little to no treatment to improve her resulting symptoms. ECF Dkt. #17 at 3, 6. While this may be true, without a treating source opinion in the record, the ALJ may rely on the opinions of state agency examining and consulting physicians. *See* 20 C.F.R. § 404.1527(e)(2)(i) (state agency consultants are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation."). The ALJ properly did so in this case.

The ALJ explained that in making his Step 3 determination, he considered the opinions of the state agency medical consultants who evaluated Plaintiff's mental impairments at Step 3 at the initial and reconsideration levels of the process. Tr. at 15-17. These agency consultants considered Plaintiff's BIF and ADHD in conjunction with the Listings and found that they did not meet or equal the Listings, specifically Listing 12.02 for Organic Mental Disorders, the most appropriate listing in effect at the time of their review. *Id.* at 122. Dr. Rudy, Ph.D., evaluated the evidence in the record at the initial level and found that Plaintiff had moderate restrictions in activities of daily living, social functioning, and maintaining concentration, persistence or pace. *Id.* He found that

Plaintiff's statements about her limitations and functional effects were fully credible, but he gave great weight to the opinion of the agency examining psychologist, Dr. Pickholtz. *Id*. at 123-124. Dr. Edwards, Ph.D, made the same findings and had the same opinion at the reconsideration level. *Id.* at 107-111.

The ALJ also discussed each of the "Paragraph B criteria," first explaining that in the functional area of understanding, remembering or applying information, Plaintiff had only moderate limitations. Tr. at 16. He acknowledged Plaintiff's reports and testimony that she had difficulties remembering things that are said to her, difficulties completing tasks, paying bills, and reading. *Id.* However, he also explained that Plaintiff was able to prepare meals, drive, shop, and provide information about her prior work history and her health. *Id.* As to finding moderate difficulties in interacting with others, the ALJ again acknowledged Plaintiff's reports of difficulty in this area, but he noted that Plaintiff could shop, spend time with friends and family, and she was described as pleasant, cooperative, and comfortable at appointments. *Id.* As to concentration, persistence, or pace, the ALJ again found that Plaintiff had moderate difficulties in this area. *Id*. While he indicated that she reported limitations in reading, completing tasks and avoiding distractions, he noted that she was also able to drive, prepare meals, use the internet and watch television. *Id.* The ALJ further found that Plaintiff was able to complete the testing which assessed her concentration and attention. *Id.* And finally, as to adapting and managing herself, the ALJ set forth Plaintiff's testimony that she had difficulties dressing and bathing, but he noted that she testified that she was able to handle self-care and personal hygiene, and she cared for pets. *Id.* He also indicated that the record evidence showed that Plaintiff had proper grooming and hygiene, normal mood and affect, and no problems with her temper. *Id.*

In Step 4 of his decision, the ALJ also gave great weight to the opinion of Dr. Pickholtz, the agency examining psychologist, who interviewed Plaintiff and administered the Wechsler Adult Intelligence Scale-IV ("WAIS-IV). Tr. at 19. The Court may look to findings elsewhere in the ALJ's decision to support his Step Three conclusions. *See generally Forrest v. Comm'r of Soc. Sec.*, 591 Fed.Appx. 359, 365-66 (6th Cir. 2014); *Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 411 (6th Cir.

9

2006) (looking to findings elsewhere in the ALJ's decision to affirm a step three medical equivalency determination).

The ALJ reviewed Dr. Pickholtz's WAIS-IV test results for Plaintiff, which showed a full-scale IQ of 64, processing speed index of 76, perceptual reasoning index of 67, a working memory index of 69, and a verbal comprehension index of 68. *Id*., citing Tr. at 442-444. The ALJ referenced Dr. Pickholtz's opinion that Plaintiff's overall capacities to understand, remember, and carry out instructions for work comparable to the 1 to 3-step tasks that she was performing at her part-time laundry work was only a slight impairment at most which could also improve with medication for her ADHD. *Id*. The ALJ noted Dr. Pickholtz's conclusion that Plaintiff had no significant impairments relating to others and a slight impairment at worst in handling work stress and pressures comparable to her laundry work, which could even improve with ADHD medication. *Id*. The ALJ also noted Dr. Pickholtz's opinion that the score of 64 on the WAIS-IV was an underestimate of Plaintiff's true functional levels as he had to push her to respond as she did not put forth full effort and he believed her true functional level to be in the borderline range. *Id*.

The ALJ also noted in his decision that Plaintiff had reported that she was working part-time and she testified that she could not work full-time because of transportation issues. Tr. at 18, 20. He further noted her testimony that if she had transportation, she could work full-time. *Id*. at 18. He took into account Plaintiff's reports of her symptoms, their severity, and their limitations, and the reports of her mother, her sister, and her friend. *Id*. at 18-20. However, he also noted that Plaintiff was able to drive by herself and drove to work, which was twenty minutes away, when her mom was not using the car. *Id.* at 18-20, 81-82. He noted that Plaintiff helped at home with chores, cared for the dogs, did the laundry, and cleaned the house.

The ALJ's Step 3 findings for each specific "Paragraph B criteria" could have been more explanatory. However, strict articulation standards are not required at Step Three. *See Price v. Heckler*, 767 F.2d 281, 284 (6th Cir. 1985). Moreover, the ALJ's Step 3 findings, coupled with the rest of his findings elsewhere in the decision, provide substantial evidence for the moderate limitations that he determined for Plaintiff in the "Paragraph B criteria."

### B. RFC

Plaintiff also challenges the ALJ's RFC determination, asserting that it is contrary to SSR 96-8p and lacks substantial evidence because he did not include limitations for time spent off-task and absenteeism. ECF Dkt. #13 at 11-13. For the following reasons, the Court finds that the ALJ applied the proper legal standards and substantial evidence supports his RFC determination which did not include off-task limitations and absenteeism.

A claimant's RFC is an assessment of the most that a claimant "can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ must consider all of a claimant's impairments and symptoms and the extent to which they are consistent with the objective medical evidence. 20 C.F.R. §§ 404.1545(a)(2)(3), 416.945(a)(2)(3). The claimant bears the responsibility of providing the evidence used to make a RFC finding. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). However, the RFC determination is one reserved for the ALJ. 20 C.F.R. §§ 404.1545(c); *see Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 157 (6th Cir. 2009); SSR 96-5p, 1996 WL 374183, at *5. SSR 96-8p elaborates on how to assess the RFC, indicating that RFC measures a claimant's ability to perform sustained work activities on a "regular and continuing basis." SSR 96-8p. SSR 96-8p defines "regular and continuing basis" as "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. The Ruling states that the RFC assessment must identify the claimant's functional limitations and restrictions and assess her work-related abilities on a function-by-function basis. *Id*. Further, it states that the RFC assessment must be based on *all* of the relevant evidence in the record, including medical history, medical signs and lab findings, the effects of treatment, daily living activity reports, lay evidence, recorded observations, effects of symptoms, evidence from work attempts, a need for a structured living environment, and work evaluations. *Id*.

Plaintiff complains that the ALJ made no mention of attendance problems or off-task behavior in his RFC for her. ECF Dkt. #13 at 15. She asserts that her educational records, her testimony, and her mother's testimony show that she would be off-task for an excessive amount of time and she would require frequent redirection. *Id*. at 15. She concludes that "[i]f she were to attempt employment on a full-time basis she would be well in excess of the thresholds given by the

VE, precluding any competitive employment." *Id*. She states that "the record as a whole makes clear Chelsea struggles to maintain work activity for a twelve hour per week schedule." *Id.*

Plaintiff is correct that the ALJ did not include an off-task or absenteeism limitation in his RFC for her. Tr. at 17. He considered Plaintiff's testimony that she has problems with distractions and completing tasks. *Id.* at 18. He also considered the testimony of Plaintiff's mother, sister, and friend who indicated that it takes Plaintiff longer to understand things and to complete tasks and she needs reminders. *Id.* at 18-19. However, the ALJ pointed to Plaintiff's daily activities of household chores, driving, and caring for pets, and her ability to perform her current job. *Id.* at 20. He further explained that no treating source concluded that Plaintiff could not perform full-time work and he adopted the examining and reviewing agency psychologists' opinions which did not preclude full-time work. He afforded the opinions of record great weight and substantial weight because no opinion existed to the contrary and the objective evidence did not contradict their findings. *Id.* He adopted their limitations for Plaintiff. *Id*. The ALJ's review of the evidence and credibility determination shows that he properly applied SSR 98-6p and substantial evidence supports his RFC determination for Plaintiff, which did not include any more restrictive off-task or absenteeism limitations than regularly applied for employees.

## **VI.** **CONCLUSION**

For the above reasons, the Court orders that the decision of the ALJ is hereby AFFIRMED and Plaintiff's complaint is hereby DISMISSED in its entirety WITH PREJUDICE.

Date: April 22, 2020 */s/George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE